UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CORY DON CAMPBELL and
LEAH JILL CAMPBELL,
                                                  No. 13-08-12720-TR

    Debtors.

## MEMORANDUM OPINION

Debtors filed a motion to modify their confirmed Chapter 13 plan after discovering a previously unknown obligation to make a large balloon payment at the end of their 60-month plan period. The balloon payment was added to Debtors' plan because their monthly disposable income was miscalculated.

The Chapter 13 trustee ("Trustee") objected to the motion. She argues that a deal is a deal, and that Debtors should perform as agreed. The Trustee moved to dismiss the case for Debtors' failure to make the balloon payment. After taking testimony and reviewing the court file, the Court concludes that it can and should grant the relief Debtors requested.

I.    FACTS

The Court finds the following facts:

1.    Debtors got into financial trouble in 2007 after Mr. Campbell broke his arm during a summer vacation. He was out of work for a period of time, and then was required to perform lower-paying "light-duty" work until he sufficiently recovered. Shortly thereafter, he

was required to work in Amarillo, Texas for some time, which added travel and living expenses.

2. After unsuccessfully attempting to refinance their house and consolidate their debts, Debtors retained an attorney to explore their bankruptcy options.

3. Debtors filed this bankruptcy case on August 19, 2008.

4. Before filing the case, Debtors' counsel prepared a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Means Test"), which showed monthly disposable income of $502.30.

5. The Means Test contained several errors: No deductions from monthly income were taken for Debtors' monthly mortgage payment ($1,915.85), health insurance costs ($182.90), or most education expenses ($275.00). Had these legitimate deductions been taken, Debtors' "monthly disposable income" would have been a *negative* $463.98, a swing of more than $960 per month in Debtors' favor.

6. The error caused problems. Debtors were advised they could not file a Chapter 7 case because their monthly income was too high. In fact, they were good candidates for a Chapter 7 case, and testified that they would have filed under Chapter 7 had they known it was available.

7. Further, Debtors' original Chapter 13 plan ("Original Plan") provided that Debtors needed to pay $30,138 to satisfy the disposable income test,[1] when the figure should have been $0. The Original Plan provided:

> **1.1 Payments** Debtor shall pay $115.80 per month for a period of 36 months. Debtor will make additional payment and/or will make a balloon payment in the last month of the plan term, if necessary, to provide for full payment under the terms of the plan
>
> …
>
> **7.1 Best Interest of Creditors Test** In order to satisfy the "best interest of creditors test" set out in section 1325(a)(4), allowed priority and non-priority unsecured claim must receive a minimum of $0.00.
>
> **7.2 Disposable Income Test** In order to satisfy the disposable income or projected disposable income test, holders of administrative expenses (including but not limited to debtor's attorney's fees and trustee fees), allowed priority claims, and allowed non-priority unsecured claims must receive a minimum of $30,138.

Because the proposed monthly plan payments did not add up to $30,138, the plan required Debtors to make a $25,969.20 "balloon" payment at the end of the plan period.

8. The Trustee objected to the Original Plan, arguing that the monthly payment was too low, the plan period was too short, and the plan was infeasible because it did not provide for plan payments by Debtors in an amount sufficient to satisfy the disposable income requirement.

9. Debtors' counsel filed an amended plan on October 6, 2008 ("Amended Plan"). The Amended Plan increased: (1) the monthly payment to $294.39; (2) the plan period to 60

---

[1] 60 x $502.30 = $30,138.

-3-

months; (3) the "best interest of creditors" amount to $12,500;[2] and (4) the disposable income minimum payment to $36,138.[3]

10.     The Trustee did not object to the Amended Plan, and the Trustee and/or Debtors' counsel submitted an agreed confirmation order to the Court on or about January 19, 2009.[4]

11.     The Court[5] entered the confirmation order on January 19, 2009. Because confirmation was unopposed, in accordance with local practice the Court did not hold a hearing or conduct an independent review of the Amended Plan.

12.     Since the Amended Plan provided for monthly plan payments of $294.39 for 60 months, Debtors owed an additional $18,474.60 after completing their regular monthly plan payments (the "Balloon Payment").

13.     Debtors were unaware that they would have to make the Balloon Payment at the end of the plan period.

14.     Debtors believed, based on advice of counsel, that they would be "done" once they made their 60 monthly plan payments.

15.     Had Debtors known they would face the Balloon Payment at the end of their 60-month plan period, they would not have agreed to the Amended Plan.

---

[2] This figure would have remained at $0, had Debtors been advised to use the federal rather than the state exemptions.
[3] The court is not sure why the disposable income figure was increased from $30,138 to $36,138.
[4] It is unclear why the Trustee did not renew her objection to the Amended Plan on feasibility grounds, since the basis for her feasibility objection to the Original Plan still existed.
[5] At the time, Hon. James S. Starzynski was the judge assigned to the case. He subsequently retired.

-4-

16. Debtors made their regular monthly plan payments. The last payment was made in August, 2013.

17. On March 25, 2013, the Trustee filed a Motion to Dismiss, asserting that the plan as confirmed is not feasible, and Debtors have taken no action to render the plan feasible.

18. The Court held a hearing on the Motion to Dismiss on June 11, 2013.[6]

19. Debtors learned about the Balloon Payment problem shortly before the hearing.

20. At the end of the hearing, the Court set a deadline of June 21, 2013 for the Debtors to seek relief from the Balloon Payment.

21. On June 17, 2012, Debtors' counsel filed a Motion for Modification of Plan Pursuant to 11 U.S.C. § 1329 or Alternatively Motion to Grant Discharge Pursuant to 11 U.S.C. § 1328(b)(1) (the "Modification Motion").

22. Debtors retained new counsel on August 5, 2013, and prior counsel withdrew.

23. The Court held a final hearing on the Modification Motion on September 17, 2013. The Court was asked to, and did, take judicial notice of certain documents in the case file (e.g. the Amended Plan, the Means Test, and an amended means test prepared by Debtors' new counsel). For the sake of completeness, the Court has elected to take judicial notice of the entire file in this case.[7]

---

[6] The hearing was originally scheduled for April 16, 2013, but was rescheduled at the request of Debtors' counsel.

[7] A bankruptcy court has the inherent authority to take judicial notice of or otherwise consider entries on its own docket. *See In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* -- B.R. --, 2013 WL 4033101, *1 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] … to take judicial notice of its own docket").

24. Debtors do not have the ability to pay the Balloon Payment.

II. DISCUSSION

A. Motion to Modify the Amended Plan Under § 1329(a). Debtors seek to modify the Amended Plan under 11 U.S.C. § 1329(a), which provides:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan[.]

1. The Standard For Determining Motion Under § 1329(a). There is a split in the case law regarding the standard for analyzing motions to amend confirmed plans under § 1329(a). The majority of courts have held that the decision to modify confirmed plans under this subsection is within the bankruptcy court's sound discretion. *See, e.g., In re Meza,* 467 F.3d 874, 877-78 (5th Cir. 2006); *In re Witkowski,* 16 F.3d 739, 748 (7th Cir. 1994); *Barbosa v. Solomon,* 235 F.3d 31, 41 (1st Cir. 2000); *In re Mattson,* 468 B.R. 361, 367 (9th Cir. BAP 2012); *In re Brown,* 219 B.R. 191, 192 (6th Cir. BAP 1998); *In re Mallari,* 2012 WL 4855180, at *6 (E.D. Mich. 2012); *In re Riddle*, 410 B.R. 460, 463 (Bankr. N.D. Tex 2009). *Cf. In re Self*, 2009 WL 2969489, at *4 (Bankr. D. Kan. 2009) (supports the "sound discretion" standard

in dicta).

In contrast, the Fourth Circuit Court of Appeals requires the movant to show a substantial, unanticipated change in the debtor's financial condition. *In re Murphy,* 474 F.3d 143 (4th Cir. 2007). Other courts have agreed. *See, e.g., In re McCray*, 172 B.R. 154, 158 (Bankr. S.D. Ga. 1994); *In re Wilson,* 157 B.R. 389, 390-92 (Bankr. S.D. Ohio 1993); *In re Woodhouse,* 119 B.R. 819, 820 (Bankr. M.D. Ala. 1990); *In re Fitak,* 92 B.R. 243, 249-50 (Bankr. S.D. Ohio 1988), *affirmed*, 121 B.R. 224 (S.D. Ohio 1990); *In re Zamora*, 2008 WL 752456, at *3 (Bankr. D.N.M. 2008) (Starzynski, J.) (relying on *Murphy* to decide a similar issue in a Chapter 12 case). For the most part, these courts reason that confirmation of a plan is *res judicata* and therefore should not be lightly disturbed. *See, e.g., McCray,* 172 B.R. at 158, citing *Woodhouse.* Several cases concluded that the "substantial, unanticipated change" standard can be deduced from legislative history. *See In re Euler,* 251 B.R. 740, 745-46 (Bankr. M.D. Fla. 2000); *In re Moseley,* 74 B.R. 791, 799 (Bankr. C.D. Cal. 1987). The Tenth Circuit has not ruled on this issue.

As set forth in the Court's recent decision in *In re Sandford*, 2013 WL 4525212, at *3 (Bankr. D.N.M. 2013), the Court believes that the *Witkowski* line of cases is better reasoned. The Seventh Circuit's holding that modification is within the bankruptcy court's discretion was based on two main arguments, both of which are persuasive:

    a.    The language of § 1329(a) is plain and unambiguous, and does not require proof of an unanticipated, substantial change in circumstances or financial condition.

-7-

16 F.3d at 742-44;[8] and

        b.      The common law doctrine of *res judicata* does not prevent modification of confirmed plans, because the doctrine does not apply "when a statutory purpose to the contrary is evident." 16 F.3d at 744-46.

The Court agrees with *Witkowski's* analysis of these two issues, and will follow the *Witkowski* line of authority. Thus, while the Court will consider changes to a Chapter 13 debtor's financial condition as a factor in determining whether to allow modification under § 1329(a), the Court will not require proof of a substantial, unanticipated change in financial condition as a prerequisite to plan modification.

        2.      <u>Conditions for Granting § 1329(a) Relief</u>. Motions to modify confirmed Chapter 13 plans must be brought before the final plan payment is made. *See e.g. In re Meza*, 467 F.3d at 878, citing *In re Moss,* 91 B.R. 563, 565 (Bankr. C.D. Cal. 1988.) *See also* Collier on Bankruptcy, ¶1329.08, n. 1 (16th Ed.) (collecting cases). In addition, plan modification proposals must be made in good faith. Section 1329(b)(1) incorporates the good faith requirement of § 1325(a)(3), which provides that "the plan has been proposed in good faith and not by any means forbidden by law." *See also In re Mattson,* 468 B.R. at 370-71; *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781 (9th Cir. BAP 2005); *In re Grutsch,* 453 B.R. 420, 427 (Bankr. D. Kan. 2011), citing *In re Davis,* 439 B.R. 863 (Bankr. N.D. Ill. 2010) and

---

[8] The *Witkowski* court cited to the *Moseley* case as one that relied on legislative history to support its ruling that the movant must show a substantial, unanticipated change in financial condition, but properly dismissed them with the following: "Legislative history helps us learn what Congress meant by what it said, but it is not a source of legal rules competing with those found in the U.S. Code." 16 F.3d at 744, citing *Matter of Sinclair,* 870 F.2d 1340, 1344 (7th Cir. 1989).

*In re Kearney,* 439 B.R. 694 (Bankr. E.D. Wis. 2010). Further, as summarized in *Witkowski*, "modifications are only allowed in three limited circumstances to: "(1) increase or reduce the amount of the payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distributions to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." 16 F.3d at 745.[9] *See also Barbosa v. Soloman,* 235 F.3d at 41 (circuit court cited with approval the bankruptcy court's ruling that parties "must strictly conform to the three limited circumstances set forth in § 1329").

        B.      <u>The Facts of This Case Favor § 1329(a) Modification</u>. Applying the legal principles outlined above, the Court concludes that sufficient grounds exist to modify the plan. The Modification Motion was filed before the last plan payment, and therefore was timely. The requested modification comes within § 1329(a)(1). The only class of creditors receiving payments under the Amended Plan is the class of general unsecured claims. The proposed modification would reduce the amount paid to that class.

        The Court also finds that the Modification Motion was filed in good faith. The motion was prompted by a mistake for which Debtors cannot be held justly responsible. Debtors asked the right questions, made their plan payments, and in general discharged the obligations explained to them. Debtors did not cause the problem now before the Court.

---

[9] *Witkowski* was issued before Congress added § 1329(a)(4), which relates to health care insurance payments. Section 1329(a)(4) does not apply in this case.

-9-

Finally, there is good cause to modify the plan. There is not now, and never has been, any reason for Debtors to pay their creditors $36,138. Even if, after being advised of their ability to file a Chapter 7 case, Debtors had elected to file under Chapter 13, they would have had no obligation to make the Balloon Payment, or even to pay $294 per month. Rather, they likely would have had to make only minimal payments for 36 months, as there would have been no minimum amount due under the "best interest of creditors" or "disposable income" tests.

Creditors were the unwitting beneficiaries in this case. The amounts Debtors paid under the Amended Plan constitute a windfall to creditors. There is no reason to require payment of a further windfall. Further, since Debtors cannot pay the Balloon Payment, the effect of denying relief would not be an increased dividend to creditors. Finally, since Debtors have the right to convert the case to Chapter 7 at this point, no further payments will be made to creditors in any event.

The Trustee argued that because Debtors' income increased in recent years, it is fair to insist that they pay the Balloon Payment, notwithstanding counsel's mistake. It is true that Debtors' combined income rose in 2010-2012, mostly because Ms. Campbell has worked more as the children have gotten older. While the argument has some appeal, the Court believes the equities favor modification. The Court has no evidence of how Debtors' expenses have changed over the years, or whether their net disposable income is still negative. Further, and perhaps more importantly, Debtors did not know about the upcoming Balloon Payment, and

-10-

therefore did not try to save money to pay for it. It is a rare Chapter 13 debtor who can pay a surprise $18,000 liability.

In sum, under the discretionary standard of § 1329(a), the Court concludes that Debtors have demonstrated sufficient cause to modify the Amended Plan and eliminate the Balloon Payment. Dismissing the case after five years of monthly plan payments would be unjust in these circumstances.

   C. <u>Debtors' Alternative Request for a "Hardship" Discharge</u>. Alternatively, Debtors ask the Court to grant them a "hardship" discharge under 11 U.S.C. § 1328(b). Section 1328(b) provides:

> Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—
>
>  (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
>  (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
>  (3) modification of the plan under section 1329 of this title is not practicable.

Based on the Court's decision to modify the Amended Plan under § 1329(a), the Debtors cannot satisfy § 1328(b)(3); modification of the Amended Plan *is* practicable. Thus, the Court will deny this alternative request for relief in light of its ruling on the request for a § 1329(b) plan modification.

E.  The Modifications to the Amended Plan.  The Court will make the following modifications to the Amended Plan:

**7.2 Disposable Income Test**.  In order to satisfy the disposable income or projected disposable income test, holders of administrative expenses (including but not limited to debtor's attorney fees and trustee fees), allowed priority claims, and allowed non-priority unsecured claims must receive a minimum of [$~~36,138~~ *$0*].

III.  CONCLUSION

Debtors are entitled to modify their plan to fix the Balloon Payment problem.  The Modification Motion therefore shall be granted as set forth above, while the Motion to Dismiss shall be denied.  A separate order will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: September 20, 2013.

Copies to:

Michael Daniels
P.O. Box 1640
Albuquerque, NM 87103

Kelley Skehen
625 Silver SW, Suite 350
Albuquerque, NM 87102